IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 02-cv-01993-WYD-BNB

JEFFREY SCOTT BEEBE,

Plaintiff,

v.

PEGGY HEIL,
SALLY CHAPMAN,
MITCH MESTAS, and
JOSEPH ORTIZ,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the following motions filed by the parties:

(1)     **Plaintiff's Rule 56(a) Motion for Summary Judgment and Brief in Support
Thereof** (the "Plaintiff's Motion"), filed March 21, 2005; and

(2)     **Defendants' Motion for Summary Judgment** (the "Defendants' Motion"), filed
March 18, 2005.

I respectfully RECOMMEND that the Plaintiff's Motion be GRANTED IN PART and

DENIED IN PART, and that the Defendants' Motion be DENIED.

## I.  STANDARD OF REVIEW

The plaintiff initiated this action *pro se*.  On October 28, 2004, counsel entered an

appearance on the plaintiff's behalf.

I must liberally construe the pleadings of a *pro se* plaintiff.  Haines v. Kerner, 104 U.S.

519, 520-21 (1972).  Consequently, I will liberally construe the papers filed by the plaintiff prior

to October 28, 2004.  I cannot act as an advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to evidence the absence of genuine issues of material fact.  Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate by reference to affidavits, depositions, answers to interrogatories and admissions on file any specific facts showing that there is a genuine issue for trial.  Id. at 324.

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC").  He filed his Amended Complaint on March 14, 2003.  The Amended Complaint contains the following allegations:

1.  The plaintiff pled guilty to a sex offense under section 18-3-305(1), C.R.S.  On February 20, 2001, he was sentenced to an indeterminate sentence of three years to life pursuant

to section 16-13-804, C.R.S. (now codified at section 18-1.3-1004, C.R.S.).  Under his

indeterminate sentence, the plaintiff is required to participate in sex offender treatment before he

will be considered for parole.

2.  The Sex Offender Treatment and Monitoring Program is the treatment program

established by the DOC.  On July 20, 2001, while incarcerated at the Fremont Correctional

Facility, the plaintiff signed a Phase I Treatment Contract in order to enter the program.  The

plaintiff began participating in the program on or about September 20, 2001.

3.  On or about May 15, 2002, one of the therapists terminated the plaintiff from the

program.  The plaintiff was terminated without prior written notice of the reason for his

termination, without an opportunity to be heard by a neutral fact finder, and without an

opportunity to present evidence or witnesses in his defense.  There is no policy or procedure in

place to provide an inmate with due process protections prior to termination from the treatment

program.

The Amended Complaint asserts one claim for violation of the plaintiff's procedural and

substantive due process rights.  Claim One alleges:

> Once Plaintiff was accepted into and began participation in
> treatment, he had a liberty interest in his continued participation in
> treatment.  The liberty interest arises from Colorado's current
> statutory sentencing scheme for sex offenders *which predicates the
> term of the sentence* on the offenders' participation and progress in
> treatment and from the statutory requirement that such offenders
> undergo treatment as a part of their sentence to incarceration.

*Amended Complaint*, pp. 4.3-4.4, ¶ 20 (emphasis added).

The defendants answered the Amended Complaint on May 27, 2003, and filed a Motion

for Judgment on the Pleadings.  The plaintiff's response to the Motion for Judgment on the

Pleadings stated: "Plaintiff's liberty interest arises from the Act's mandate of treatment as a part

3

of his sentence, the denial of which then creates a situation which *exceeds the sentence imposed*,"
and "[a]s treatment represents the factor upon which plaintiff's *length of incarceration* is
predicated, its deprivation imposes atypical and significant hardship on him." *Plaintiff's Response
to Defendants' Motion for Judgment on the Pleadings*, filed July 31, 2003, pp. 6,7 (emphasis
added).

Because the plaintiff appeared to be challenging the duration of his custody, I determined
that under Preiser v. Rodriquez, 411 U.S. 475 (1973), the requested relief could be sought only
through a habeas corpus proceeding. *Order*, dated December 15, 2003.  Consequently, I
construed the Amended Complaint as a petition for a writ of habeas corpus and denied the
defendants' Motion for Judgment on the Pleadings without prejudice. Id.

The plaintiff sought reconsideration of my Order of December 15, 2003. *Plaintiff's
Motion for Reconsideration of Court Order*, filed January 5, 2004.  In his motion for
reconsideration, the plaintiff made clear that any relief granted would affect only his *eligibility* for
parole. Id.  Because mere eligibility for parole does not necessarily imply the invalidity of the
plaintiff's sentence, I determined that the plaintiff's claim could proceed under 42 U.S.C. § 1983.
*Order*, dated April 2, 2004 (filed April 5, 2004).[1]  I vacated my Order of December 15, 2003, and

---

[1]In his order of August 30, 2005, the district judge stated that I did not address the
defendants' argument that the case should be dismissed because it attacks the duration of the
plaintiff's confinement and should be brought as a habeas petition pursuant to 28 U.S.C. § 2241.
Beebe v. Heil, 333 F. Supp. 2d 1011, 1014 n.1 (D. Colo. 2004).  I addressed that issue twice,
however, in separate orders dated December 15, 2003, and April 2, 2004 (filed April 5, 2004).
Specifically, in my order of April 2, 2004, I ruled:

> I [previously] determined that the plaintiff was challenging the term
> of his sentence, and that such relief could only be sought in a
> habeas proceeding.  In his Motion for Reconsideration, the plaintiff
> makes clear that any relief granted will affect only his eligibility for
> parole.  A prisoner's claim for declaratory relief is cognizable under

reinstated the defendants' Motion for Judgment on the Pleadings.  Id.

In addressing the merits of the Motion for Judgment on the Pleadings, I found that Colorado's discretionary parole scheme does not create a constitutionally protected entitlement to or liberty interest in parole, and that the plaintiff does not have a liberty interest in continued participation in the sex offender treatment program on the sole basis that the program is required for eligibility of parole.[2] *Recommendation of United States Magistrate Judge*, issued April 1, 2004 (filed April 5, 2004).   Accordingly, I recommended that the Motion for Judgment on the Pleadings be granted and that the case be dismissed.  Id.

The district judge rejected my recommendation, finding that the allegations of the Amended Complaint stated a cognizable liberty interest in continued appropriate treatment. Beebe v. Heil, 333 F. Supp. 2d 1011, 1017 (D. Colo. 2004).  The plaintiff and the defendants have filed cross-motions for summary judgment.

## III.   UNDISPUTED MATERIAL FACTS

On February 20, 2001, the plaintiff pled guilty to a sex offense as defined in section 18-3-305(1), C.R.S.  *Appendix to Plaintiff's Rule 56(a) Motion for Summary Judgment [etc.]*, filed March 21, 2005 (hereafter "*App.*"), pp. 32-33, ¶¶ 10-11.  He was sentenced to an indeterminate sentence of three years to life pursuant to section 16-13-804, C.R.S. (now codified at section 18-

---

section 1983 if it does not necessarily imply the invalidity of the punishment imposed.  Mere eligibility for parole does not necessarily imply the invalidity of the plaintiff's sentence. Therefore, the plaintiff's claim may proceed under section 1983.

*Order*, dated April 2, 2004, at p. 2 (internal quotations and citations omitted).

[2]Because I did not find a liberty interest, I did not address the plaintiff's procedural and substantive due process claims.

1.3-1004, C.R.S.).  *App.*, p. 33, ¶¶ 12-14.  The plaintiff has served the minimum term of his

sentence.  *App.*, p. 33, ¶¶ 13-15.

Section 18-1.3-1004(3), C.R.S., states:

> Each sex offender sentenced pursuant to this section shall be
> required as a part of the sentence to undergo treatment to the
> extent appropriate pursuant to 16-11.7-105, C.R.S.

For a sex offender to be eligible for release on parole, the parole board must consider

whether the sex offender has successfully progressed in treatment.  Section 18-1.3-1006(1)(a),

C.R.S.  The Sex Offender Treatment and Monitoring Program ("SOTMP") is the treatment

program established by the DOC.  *App.*, p. 34, ¶¶ 20-23.  On July 20, 2001, while incarcerated at

the Fremont Correctional Facility, the plaintiff signed a Phase I Treatment Contract, and he began

participating in the program on or about September 20, 2001.  *App.*, pp. 36-37, ¶¶ 38, 46.  On or

about May 15, 2002, the plaintiff was terminated from the program for allegedly receiving mail

from an under-age female in violation of the Treatment Contract.  *App.*, p. 69.  The plaintiff was

not given an opportunity to present evidence in his defense prior to being terminated.  *App.*, p. 40,

¶ 65.

The plaintiff may apply for reinstatement into the SOTMP if he admits to the alleged

infraction and satisfies certain other requirements.  *Plaintiff's Motion*, ¶ 7; *App.*, p. 43, ¶ 100.  He

disputes the grounds for his termination, however, and has refused to admit that he violated his

Treatment Contract.  *Plaintiff's Motion*, ¶ 7.  He has not been reinstated into treatment.  Id.

## IV.  THE LAW

The Due Process Clause of the Fourteenth Amendment guarantees due process when a

person may be deprived of life, liberty, or property.  U.S. Const. amend. XIV, § 1.  The Due

Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted

criminal's existence that qualify as 'liberty interests.'" <u>Harper v. Young</u>, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997).  Thus, before determining whether a plaintiff's procedural or substantive due process rights have been violated, the court must determine whether the plaintiff has a liberty interest.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law.  <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by* <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  State-created liberty interests are found only under limited circumstances:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

<u>Sandin</u>, 515 U.S. at 483-84.[3]

To evaluate whether a prisoner's freedom has been restrained in a manner that imposes atypical and significant hardship, the court must carefully examine the conditions of the prisoner's confinement, <u>Gaines v. Stenseng</u>, 292 F.3d 1222, 1225-26 (10th Cir. 2002), including the duration and degree of plaintiff's restrictions as compared to other inmates.  <u>Perkins v. Kansas Dep't of Corr.</u>, 165 F.3d 803, 809 (10th Cir. 1999).

---

[3]In <u>Sandin</u>, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest.  The prior methodology required examination of prison regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement."  515 U.S. at 480-81.  The Court instead returned to the due process principles that were established and applied in <u>Meachum v. Fano</u>, 427 U.S. 215 (1976) and <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).  These principles focus on the nature of the deprivation instead of the language of a particular regulation.  <u>Sandin</u>, 515 U.S. at 481.

The deprivation of a liberty interest can occur procedurally or substantively.  County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (stating that "[t]he touchstone of due process is protection of the individual against arbitrary action of government whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective") (internal quotations and citations omitted).

When an inmate alleges a violation of his procedural due process rights, the court must first determine whether a liberty interest exists.  If a liberty interest does exist, the court must determine (1) the appropriate procedural protections due to the inmate to prevent arbitrary abrogation of the liberty interest, and (2) whether the inmate was afforded those protections. Wolff, 418 U.S. at 557 (stating that an inmate found to have a liberty interest is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated").  When an inmate alleges a violation of his substantive due process rights, and a liberty interest is found to exist, the court must determine if the deprivation was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  County of Sacramento, 523 U.S. at 847 and n.8.

## V.  ANALYSIS

### A.  Plaintiff's Motion for Summary Judgment

#### 1.  The Existence of a Liberty Interest

The plaintiff seeks summary judgment solely on his substantive due process claim. *Plaintiff's Motion*, ¶¶ 1, 8.[4]  The Plaintiff's Motion does not address the issue of an alleged

---

[4]The Amended Complaint, liberally construed, alleges that all of the defendants are violating the plaintiff's substantive due process rights by excluding him from treatment required to be eligible for parole. *Amended Complaint*, pp. 4.3 - 4.6; ¶¶ 31-32.

violation of the plaintiff's procedural due process rights.

In his order dated August 30, 2004, the district judge ruled:

> Colorado has created a scheme in which a sex offender is required
> to undergo treatment and in which the Colorado Department of
> Corrections lacks discretion to withhold treatment.  The
> withholding of treatment, then, would work a major change in the
> condition of Plaintiff's confinement since his status would change
> from eligible to be considered for parole to ineligible to be
> considered for parole.  Such a change would, without doubt, have a
> serious impact on a prisoner's morale, outlook, hope for the future,
> and motivation to pursue rehabilitation.  As such, there can be no
> serious dispute that the deprivation of treatment amounts to a
> grievous loss to the inmate.  For this reason, I find that Plaintiff's
> Amended Complaint asserts allegations stating a cognizable liberty
> interest for due process purposes.

Beebe, 333 F. Supp. 2d at 1017 (internal quotations and citations omitted).  I understand this

statement to be a determination by the district judge that a liberty interest exists in continued

appropriate treatment.[5]

The defendants rely on the Affidavit of Allan Stanley, Chairman of the Colorado State

Board of Parole, to argue that participation in the SOTMP is not required for the plaintiff to be

eligible for parole.[6]  Mr. Stanley states in his affidavit that an inmate sentenced under the

---

[5]If, contrary to my understanding, the district judge did not rule that the plaintiff has a
liberty interest in continued appropriate treatment, the facts underlying his articulated basis for the
existence of such a liberty interest--the lack of discretion to withhold treatment coupled with the
withholding of treatment--are now undisputed.  Therefore, the district judge has, at a minimum,
ruled that a liberty interest in continued appropriate treatment would exist under facts now
undisputed.

[6]The defendants' response to Plaintiff's Motion does not admit or deny any of the factual
statements set forth in the Plaintiff's Motion, nor does the response contain any evidence.  The
response relies on the Affidavit of Mr. Allan Stanley, which was submitted in support of the
Defendants' Motion.  The defendants' response to the Plaintiff's Motion does not refer to any of
the remaining evidence which is attached to the Defendants' Motion.  Accordingly, I will consider

Colorado Sex Offender Lifetime Supervision Act of 1998, as was the plaintiff here, is eligible for

parole upon completion of his indeterminate sentence. *Defendants' Motion*, Exhibit A-1, ¶ 4.  He

states further that successful treatment is "but one factor the Parole Board considers in making a

determination of whether to grant the sex offender parole." Id. at ¶ 6.  Other factors include the

inmate's conduct during incarceration, his previous attempts at parole, the circumstances of his

offense, the time he has served, his risk to the public if paroled, and the statutory guidelines in

section 17-22.5-404, C.R.S.  Id.  Mr. Stanley states that the plaintiff has been considered for

parole on more than one occasion, and that on October 18, 2004, the Parole Board chose to defer

his parole "based on aggravating factors/inadequate time served (circumstances of offense), risk

control problems (Mr. Beebe's continued need for treatment) as well as information presented by

Mr. Beebe's case manager, a review of the DOC Working File, an interview with Mr. Beebe, the

offense for which he was sentenced, and his time served.  Also taken into consideration were the

statutory guidelines in 17.22-5-404." Id. at ¶¶ 7-9.

Importantly, however, the district judge in his order of August 30, 2004, interpreted

section 18-1.3-1004, C.R.S., to require that "participation in a treatment program is an absolute

prerequisite for release on parole." Beebe, 333 F. Supp. 2d at 1012.  Specifically, the district

judge held:

> Colorado's Sex Offender Lifetime Supervision Act does not merely
> suggest that a prisoner who wants to seek parole might enhance his
> chances of being granted early release if he participates in a sex

---

Mr. Stanley's affidavit in my analysis of the Plaintiff's Motion.  I will not, however, search
through the remaining evidence attached to Defendants' Motion in an effort to fashion arguments
for the defendants in response to Plaintiff's Motion.  See Gross v. Burggraf Construction Co., 53
F.3d 1531, 1546 (10th Cir. 1995).  It is the litigants' responsibility to provide the court with
concise arguments, relevant facts, and specific citations to authorities and supporting evidence.
Toth v. Gates Rubber Co., 2000 WL 796068, *8 (10th Cir. 2000).

offender treatment program.  To the contrary, the Act states, "Each sex offender sentenced pursuant to this section shall be *required* as part of the sentence to undergo treatment to the extent appropriate pursuant to section 16-11.7-105. . . ."  Colo. Rev. Stat. § 18-1.3-1004(3)(emphasis added).  While the statute does vest some degree of discretion in the Colorado Department of Corrections, that discretion is not as to whether a sex offender should receive treatment; rather it is as to what kind of treatment is "appropriate" for the offender. . . .

In the case at hand, [p]laintiff's claim of a liberty interest is predicated on the mandatory language of the statute which requires the state to provide convicted sex offenders with treatment during their imprisonment.

Id. at 1016.

"Statutory construction is a matter of law to be decided by the court."  Bowe v. SMC Electrical Products, Inc., 945 F. Supp. 1482, 1484 (D. Colo. 1996).  Mr. Stanley's factual assertions cannot create a material fact dispute in the face of the determination by the district judge that section 18-1.3-1004 mandates participation in a treatment program as an absolute prerequisite to release on parole.

Even if the issue were not decided as a matter of law, Mr. Stanley's carefully worded affidavit fails to prove that the plaintiff is eligible for parole.  The very essence of being eligible for parole is that there is nothing which automatically disqualifies an inmate from receiving parole.  An inmate is not eligible for parole if the lack of treatment automatically prevents him from receiving parole.  Although the defendants provide evidence that the Parole Board considers several factors when determining whether a sex offender will be granted parole, there is no evidence that successful progression in sex offender treatment is not a mandatory or controlling factor in that consideration.  Nor is there any evidence that any inmate ever has been paroled without successful progression in treatment.

11

To the contrary, the evidence in the record before me tends to show that participation in a treatment program may be a prerequisite to release on parole. See, e.g., App., p. 30 (where Sally Chapman states that "[t]reatment remains a voluntary program, though it is necessary for [the plaintiff] to participate and progress in treatment to receive a recommendation from Mental Health for parole or community corrections, in addition to meeting other criteria as established by the Sex Offender Management Board"); and p. 72 (where Mitch Maestas states that "[t]reatment remains a voluntary program for offenders, but they do have to meet treatment recommendations before Mental Health will make a recommendation for parole or community corrections").

It is established that the plaintiff has a liberty interest in receiving continued appropriate treatment. Beebe, 333 F. Supp. 2d at 1017.  In addition, the district judge has construed the statute as requiring that "[p]articipation in a treatment program is an absolute prerequisite for release on parole." Id. at 1012.  Consequently, the plaintiff can prevail on his substantive due process claim if the defendants' actions in excluding him from the SOTMP were "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento, 523 U.S. at 847 and n.8.

## 2.  The Substantive Due Process Claim

In County of Sacramento, the Supreme Court undertook a detailed analysis of substantive due process.  The Supreme Court first noted that the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a government officer that is at issue." Id. at 846.  Here, the plaintiff alleges that specific acts of prison officials violated his substantive due process rights.

Substantive due process protects against government power arbitrarily and oppressively exercised.  Id. at 845.  The Supreme Court is reluctant to expand the concept of substantive due process, however.  Id. at 842.  Consequently, according to the Court:

> Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense, thereby recognizing the point made in different circumstances by Chief Justice Marshall that it is a *constitution* we are expounding.

Id. at 846 (internal quotations and citations omitted; emphasis in original).  "Thus, in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Id. at 847 n.8

Conduct which is merely negligent "is categorically beneath the constitutional due process threshold" and cannot be the basis of a violation of substantive due process.  Id. at 849; see Daniels v. Williams, 474 U.S. 327, 328 (1986) (stating that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property") (emphasis in original).

Conduct at the other end of the culpability spectrum--that which is deliberately intended to injure in some way unjustifiable by any government interest--would most probably support a due process claim.  County of Sacramento, 523 U.S. at 849.  Here, however, there is no allegation or evidence that the defendants harbored an intent to harm the plaintiff.  See Childress v. City of Arapaho, Oklahoma, 210 F.3d 1154, 1158 (10th Cir. 2000).

In this case, the plaintiff claims that the defendants acted recklessly or with deliberate indifference--in the middle-range between negligence and conduct deliberately intended to harm.

13

Under these circumstances, the Supreme Court has said:

> Whether the point of the conscience shocking is reached when
> injuries are produced with culpability falling within the middle
> range, following from something more than negligence but less that
> intentional conduct, such as recklessness or gross negligence, is a
> matter for closer calls.

County of Sacramento, 523 U.S. at 849 (internal quotations and citations omitted).

The Court recognized that some official acts of deliberate indifference may be actionable

under the Fourteenth Amendment as violating substantive due process, id., and particularly so

when the defendants have an opportunity to deliberate about their actions:

> [L]iability for deliberate indifference to inmate welfare rests upon
> the luxury enjoyed by prison officials of having time to make
> unhurried judgments, upon the chance for repeated reflection,
> largely uncomplicated by the pulls of competing obligations.  When
> such extended opportunities to do better are teamed with
> protracted failure even to care, indifference is truly shocking.

Id. at 853.

In middle-range cases like this one, the totality of the facts, combined with the

circumstances and context, become critical factors in evaluating the behavior of government

actors to determine whether their actions are conscience-shocking.  As the Supreme Court noted:

> Rules of due process are not . . . subject to mechanical application
> in unfamiliar territory.  Deliberate indifference that shocks in one
> environment may not be so patently egregious in another, and our
> concern with preserving the constitutional proportions of
> substantive due process demands an exact analysis of circumstances
> before any abuse of power is condemned as conscience shocking.

Id. at 850.

14

Based on the allegations of the plaintiff's Amended Complaint, the district judge found that the plaintiff "has a powerful interest both in the right to participate in treatment and in being provided due process before being terminated from the treatment program--particularly since his progress in the program must be evaluated before he can be considered for parole." Beebe, 333 F. Supp. 2d at 1018.  The district judge also found:

> [T]he [plaintiff's] allegation that no program or policy was in place to provide due process to Plaintiff before he was arbitrarily deprived of his right to treatment in the program could satisfy the "shocks the conscience" test, especially since the Amended Complaint suggests that prison officials failed to do so despite having had ample time and opportunity to establish a policy or practice that would have provided basic due process protections to Plaintiff before his termination. . . . Where the Defendants were not called upon to make split-second decisions, actual deliberation should have been employed.

Id.

The district judge instructed that "in a case such as this, where the authorities were not merely supposed to reflect and care, but in addition were to carry out a prescribed course of treatment, the allegation that the prison officials who failed to institute a practice or procedure to provide due process to Plaintiff before his exclusion from the program were 'deliberately indifferent' must be evaluated to determine whether their behavior shocks the conscience." Id. (internal quotations and citation omitted).

Thus, the district judge identified one issue as particularly important in his analysis-- whether a program or policy was in place to provide due process to the plaintiff before he was deprived of his right to treatment.  The plaintiff alleged in his Amended Complaint (upon information and belief) that there was no "practice and/or policy requiring sex offenders to be

15

provided with due process protections before they are terminated from sex offender treatment."

*Amended Complaint*, ¶¶ 28-30.  Those allegations were denied by the defendants.  *Answer*, p. 2.

The plaintiff has not produced any evidence supporting his allegations that no program or policy

was in place to provide due process before he was terminated from treatment.

Instead, the plaintiff has presented evidence that an informal, ex-parte process exists to

determine whether to terminate sex offender treatment.  Specifically, Peggy Heil responded to the

plaintiff's interrogatories by stating in part:

> [Interrogatory] 13:   Please describe in detail the objective
> standards or methods that are to be used or otherwise employed by
> a facility sex offender treatment team to verify or otherwise confirm
> that an offender has actually violated a condition of a treatment
> contract when reviewing the reasons stated by a therapist for the
> termination of the offender from group.
>
> ANSWER:   Information about contract violations is obtained in a
> variety of ways.  Sometimes the offender is convicted of a COPD
> violation that indicates she/he has violated the contract.  At other
> times, correctional staff observes and documents behavior that
> violates the treatment contract but does not constitute a COPD
> violation.  In other cases, such as your specific situation, material
> comes through the mailroom or is found in an offender's room and
> mental health is asked to review the material.  If the material
> violates a contract rule, the situation is staffed with the facility
> team. . . .

*App.*, p. 22.

In addition, Sally Chapman stated:

> The SOTMP at Fremont does not utilize due process proceedings
> in terminations, but does utilize Termination Guidelines.  These
> guidelines provide a foundation for making determinations in which
> an inmate will be terminated from group.  Due process proceedings
> in a therapeutic setting would be contra-indicated as it would
> necessitate the involvement of a third person who would be
> inexperienced and untrained in the dynamics of sex offenders.  It

16

would also be a violation of confidentiality, and thus would
jeopardize the therapeutic process.

The Department of Corrections is statutorily mandated to provide
treatment for sex offenders as long as they are compliant with
treatment, i.e. not minimizing or denying their crime, admitting a
risk to reoffend, and progressing in treatment. It would be
unethical to allow a sex offender to continue to participate in
treatment in which they were not progressing.

*App.*, p. 29.

The Sex Offender Treatment Program Termination Guidelines (the "Guidelines") also

were presented by the plaintiff in support of his motion. *App.*, pp. 56-58. The Guidelines

provide, in relevant part:

When a therapist feels it is appropriate to terminate an inmate from
group, he/she will present the reason for termination to the facility
sex offender treatment team. In some situations it will be necessary
to terminate the inmate's participation in group immediately. If the
inmate's presence in group constitutes a dangerous situation, the
therapist may terminate the inmate from
group, but will review the termination with the facility team the
next working day.

*App.*, p. 58.

The evidence indicates that the following events occurred leading up to and in connection

with the plaintiff's termination from treatment:

On approximately May 15, 2002, Mitch Maestas became aware of a letter addressed to

the plaintiff which indicated it was written by a 17 year old girl. *App.*, pp. 38-39, ¶ 56.

Thereafter, the plaintiff's sex offender treatment team met to discuss the plaintiff's continued

treatment; reached a consensus that the plaintiff should be terminated from treatment; informed

the plaintiff that he had been terminated from treatment; and directed the plaintiff to leave his

17

Phase I therapy group. *App.*, pp. 39-40, ¶ 64. Prior to reaching its decision to terminate the

plaintiff's treatment, the sex offender treatment team did not notify the plaintiff of the reasons

upon which it was considering terminating his treatment; did not allow the plaintiff to present

evidence on the issue of whether he had corresponded with a minor girl; did not provide for a

neutral decision-maker; and did not allow the plaintiff an opportunity to call witnesses. *App.*, p.

40, ¶ 65.

Finally, there is evidence that the plaintiff's termination was merely a "time out" from

treatment to help him understand the importance of the alleged violations of his Treatment

Contract, and that he is eligible to re-enter the program 90 days after termination and upon the

satisfactory completion of the following assignments:

> Write 4-5 page paper in which you discuss your manipulation of
> your Phase I therapists and group members by persisting in sexual
> deviancy; i.e. inappropriate correspondence, including overt sexual
> comments and contact with minors.

> Write 4-5 page paper discussing how this continued behavior
> relates to your current conviction, both compare and contrast your
> behaviors, grooming techniques, distortions, etc.

*App.*, pp. 65-66.

Under the facts presented here, I cannot say as a matter of law that the conduct of the

defendants is so egregious and/or outrageous as to shock the contemporary conscience because:

(1)     Fremont Correctional Facility utilized the Sex Offender Treatment Program

Termination Guidelines in deciding whether to terminate the plaintiff's sex offender treatment,

*App.* at p. 29;

(2)    The Guidelines establish a process to be followed in connection with terminating

an inmate from SOTMP.  Among other things, an alleged violation of a Treatment Contract must

be reviewed by a mental health professional and must be "staffed" by the facility sex offender

treatment team.  The staffing of the case must occur prior to the termination of treatment or on

the next working day after termination, *App.*, pp. 22, 56-58;

(3)    The Guidelines were applied to the plaintiff.  His treatment was terminated because

the treatment team determined that the plaintiff violated his Treatment Contract by "having in

[his] possession numerous inappropriate written [sic] & pictures" including "correspondence with

a minor (age 17) girl, " *App.*, pp. 17, 22, 27, 39-40;

(4)    The plaintiff's termination from treatment is not permanent, and the plaintiff may

re-enter the program 90 days after termination and upon satisfactory completion of certain

conditions.  *App.*, pp. 65-66.  There is no evidence that the plaintiff attempted to satisfy the

imposed conditions and was arbitrarily denied re-entry into treatment; and

(5)    Although the termination process is informal and ex-parte, the defendants have

articulated a reasonable justification and a legitimate governmental objective supporting the

informal, ex-parte procedure established in the *Sex Offender Treatment Program Termination*

*Guidelines.*  Specifically, according to Sally Chapman:

> Due process proceedings in a therapeutic setting would be contra-
> indicated as it would necessitate the involvement of a third person
> who would be inexperienced and untrained in the dynamics of sex
> offenders.  It would also be a violation of confidentiality, and thus
> would jeopardize the therapeutic process.
>
> *        *        *

19

It would be unethical to allow a sex offender to continue to participate in treatment in which they were not progressing.

*App*., p. 29.

Whether the process in place afforded the plaintiff appropriate procedural protections and whether those procedures were followed here are questions of procedural due process, see supra at p. 8, not raised in the Plaintiff's Motion.

The Plaintiff's Motion seeks (1) summary judgment on the plaintiff's substantive due process claim, *Plaintiff's Motion*, ¶¶ 1, 8; (2) a declaration that the plaintiff has a liberty interest in continued treatment as a sex offender under section 18-1.3-1004(3), C.R.S., id. at ¶ 13; and (3) reinstatement into appropriate treatment.  Id.  The Amended Complaint, by contrast, seeks only the following relief:

> 1.      Declare that Plaintiff has a liberty interest in his continued participation in sex offender treatment.
>
> 2.      Grant other such relief as this Court may deem just and proper.

*Amended Complaint*, p. 8.

The plaintiff's motion for summary judgment should be GRANTED IN PART to the extent it seeks a declaration that the plaintiff has a liberty interest in continued appropriate treatment under section 18-1.3-1004(3), C.R.S., based on the ruling by the district judge in Beebe, 333 F. Supp. 2d at 1017.  The plaintiff has failed to establish as a matter of law that the defendants' conduct in terminating his treatment shocks the contemporary conscience, however, and the Plaintiff's Motion should be DENIED in all other respects, including the plaintiff's request for summary judgment on his substantive due process claim and for reinstatement into appropriate treatment.

20

### B.  Defendants' Motion for Summary Judgment

The defendants seek summary judgment based solely on the argument that the plaintiff does not have a liberty interest in continued treatment.  As discussed above, that issue has been decided adversely to the defendants by the district judge.  Accordingly, I respectfully RECOMMEND that the defendants' summary judgment motion be DENIED.

## VI.  CONCLUSION

I respectfully RECOMMEND that Plaintiff's Motion  be GRANTED IN PART and DENIED IN PART as follows:

1.      GRANTED to the extent it seeks a declaration that the plaintiff has a liberty interest in continued appropriate treatment under section 18-1.3-1004(3), C.R.S.;

2.      DENIED to the extent the plaintiff requests summary judgment on his substantive due process claim and for reinstatement into appropriate treatment; and

3.      DENIED in all other respects.

I further RECOMMENDED that the Defendants' Motion be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for

appellate review.  <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 4, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

22